1
2
3
4
5
6
7
8
9
10                                                    The Honorable Robert S. Lasnik
11
12                IN THE UNITED STATES DISTRICT COURT
13              FOR THE WESTERN DISTRICT OF WASHINGTON
14                              AT SEATTLE
15
16
17   OCEAN BEAUTY SEAFOODS, LLC, an            NO.  2:12-cv-01331-RSL
18   Alaska limited liability company,
19                                             PLAINTIFF'S MOTION FOR
20                  Plaintiff,                 PARTIAL SUMMARY JUDGMENT
21                                             RE:  DUTY TO DEFEND
22        v.
23                                             NOTE ON MOTION CALENDAR:
24   NATIONAL UNION FIRE INSURANCE             Friday, June 7, 2013
25   COMPANY OF PITTSBURGH, P.A., a
26   Pennsylvania corporation,
27
28                  Defendant.
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF REQUESTED ...................................................1

II.     STATEMENT OF FACTS ..............................................................................2

    A.      Ocean Beauty and the National Union Policy .............................................2

        1.      Basic Terms and Coverage Grant ..................................................2

        2.      Duty to Defend..........................................................................3

    B.      The Federal Grand Jury Proceeding .........................................................4

        1.      The December 2008 Search Warrants and Document Subpoena ....4

        2.      The 2009 Target Letter and Grand Jury Subpoenas to
            Individual Insureds.....................................................................5

        3.      The August 2011 Plea Demands...................................................6

        4.      The Insured Parties' Defense Effort .............................................6

        5.      The Written Settlement Demands .................................................7

        6.      The Settlement with the U.S. Government ....................................7

    C.      Ocean Beauty's Tender of the Underlying Claim and National Union's
        Belated Acceptance...................................................................................8

        1.      Ocean Beauty Tendered Defense of the Search Warrants and
            Subpoenas, and National Union Refused to Defend.......................8

        2.      Ocean Beauty Tendered the September 2011 Plea Demands,
            and National Union Again Refused to Defend. ..............................9

        3.      Ocean Beauty Tendered the February 27, 2012 Settlement
            Demand, and National Union Did Not Defend...............................9

        4.      Ocean Beauty Tendered the April 2012 Written Settlement
            Demand—and National Union *Accepted* the Tender......................9

III.    ARGUMENT AND AUTHORITIES..................................................................10

    A.      Ocean Beauty Was Entitled to a Defense Because "Claim" Can
        Reasonably Be Interpreted to Include the Subpoenas, Search Warrants,
        Target Letter, and Plea Demands.............................................................10

B.    National Union's Duty to Defend Was Triggered in December 2008.......12

    1.    The Subpoenas, Search Warrants, and Target Letter Fell Within the Plain Meaning of the Policy's Definition of "Claim." ................................................................................12

    2.    The Case Law Confirms that Subpoenas and Search Warrants Are "Claims" Under D&O Policies. ..............................13

        a.    *Polychron v. Crum & Forster Ins. Cos.*..............................14

        b.    *Gold Tip, LLC v. Carolina Cas. Ins. Co.* ...........................14

        c.    *Agilis Benefit Servs., LLC v. Travelers Cas. & Surety Co. of Am.* ........................................................................15

        d.    *Minuteman Int'l, Inc. v. Great Am. Ins. Co.* ......................15

        e.    *Richardson Elecs., Ltd. v. Fed. Ins. Co*..............................16

C.    The August 2011 Plea Demands and February 27, 2012 Settlement Demand Are Claims Under the Policy, and Are Indistinguishable from the April 2012 Communication that National Union Accepted as a Claim..............................................................................19

D.    National Union Is Liable for Ocean Beauty's Defense Costs from December 2008 Through the Date of the Court's Ruling on this Motion—the Period of Legal Uncertainty—Regardless of the Court's Ultimate Coverage Decision. ...................................................19

E.    National Union's Notice-Based Defense Fails. ........................................20

    1.    The Issue—National Union Claims Ocean Beauty Did Not Use the "Magic Word."........................................................................20

    2.    There Is No Material Difference Between a Duty to Defend and a Duty to Advance Defense Costs:  The Standard Is the Same and National Union Was Obligated to Do One or the Other. ...............................................................................21

    3.    Ocean Beauty Unmistakably Sought Coverage—Which Necessarily Included a Defense—and National Union Treated the Claim Accordingly.................................................................22

    4.    "Tender" Would Have Been Futile, and National Union Cannot Prove Prejudice Resulting from Any Failure to Clearly Tender....23

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE:  DUTY TO DEFEND - ii
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

IV.    CONCLUSION..........................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

# TABLE OF AUTHORITIES

## Cases

*Agilis Benefit Servs., LLC v. Travelers Cas. & Surety Co. of Am.*, No. 5:08-CV-213, 2010 WL 8573372 (E.D. Tex. Apr. 30, 2010) ................................. 14, 15, 16, 18

*Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398 (2010) ........................................ passim

*Boeing Co. v. Aetna Cas. & Surety Co.*, 113 Wn.2d 869 (1990) ................................. 12

*Center for Blood Research, Inc. v. Coregis Ins. Co.*, 2001 WL 34088617 (D. Mass. Nov. 14, 2001) ........................................ 17, 18, 19

*Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, No. 06-CV-13105, 2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008) .......................... 17, 18, 19

*Gold Tip, LLC v. Carolina Cas. Ins. Co.*, No. 2:11-CV-00765, 2012 WL 3638538 (D. Utah Aug. 23, 2012) ................................. 14, 15, 16, 18

*Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133 (2001) ................................. 23

*Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567 (1998) ........................................ 12

*Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161 (8th Cir. 2011) .......................... 21

*Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03 C 6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004) ........................................ 15, 16, 18

*Nat'l Surety Corp. v. Immunex Corp.* 297 P.3d 688, --Wn.2d-- (2013) ........................ 10, 11, 12

*Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 734 F. Supp. 2d 1304 (S.D. Fla. 2010) ........................................ 17, 18, 19

*Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*, 83 Wn. App. 432 (1996) .................... 23

*Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461 (8th Cir. 1990) .......................... 14, 16, 18

*Puget Sound Serv. Corp. v. Bush*, 45 Wn. App. 312 (1986) ........................................ 23

*Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50 (1994) ...................... 13

*Richardson Elecs., Ltd. v. Fed. Ins. Co.*, 120 F. Supp. 2d 698 (N.D. Ill. 2000) .................... 16, 18

*Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751 (2002) ................................. 20

*Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43 (2007) .......................... 10, 11, 12, 18

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - iv
No. 2:12-cv-01331-RSL

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**Statutes**

WAC 284-30-330(13) ............................................................................................. 24

**Other Authorities**

U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-11.151 (1997) ................................. 6

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - v
No. 2:12-cv-01331-RSL

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# I.   INTRODUCTION AND RELIEF REQUESTED

This is an insurance coverage dispute between Ocean Beauty Seafoods, LLC ("Ocean Beauty") and its directors and officers ("D&O") insurer, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union").  The dispute arises out of a proceeding brought against Ocean Beauty by the U.S. Department of Justice (the "DOJ proceeding").  The DOJ proceeding began in December 2008, when federal agents executed search warrants and grand jury subpoenas on Ocean Beauty at its Seattle headquarters and other facilities.  Shortly after the search, it was confirmed that the company and certain of its employees were the targets of a criminal investigation into distribution of allegedly adulterated salmon products.  That being the case, Ocean Beauty treated the matter seriously:  it commenced a costly and complex defense effort on behalf of the company and the targeted employees.  That defense was fundamentally successful, and resulted, four years later, in a favorable settlement.

When Ocean Beauty tendered the subpoenas and search warrants under its D&O policy (the "Policy"),[1] National Union denied coverage, relying on an interpretation of the Policy's definition of "Claim" that is unsupported by the policy language, inconsistent with Washington's standards governing the liability insurer's duty to defend, and contrary to the case law addressing the definition of "Claim."  It was not until April 24, 2012 that National Union accepted Ocean Beauty's tender of defense of the DOJ proceeding, and then on a going-forward basis only.  National Union continues to refuse to pay Ocean Beauty's covered defense costs incurred between December 2008 and April 24, 2012.  Accordingly, Ocean Beauty seeks partial summary judgment declaring that it is entitled, under the Policy, to payment of its reasonable and

---

[1] The Policy is attached as Exhibit A to the Declaration of Anthony Ross ("Ross Decl.") in support of this motion.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 1
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

necessary defense costs incurred in defending against the DOJ proceeding from December 2008 to April 24, 2012.

This motion does not seek a ruling on: (a) the amount of Ocean Beauty's damages; or (b) the merits of its extracontractual (bad-faith and Washington Insurance Fair Conduct Act) claims against National Union. Rather, this motion seeks a ruling only that the Policy covers Ocean Beauty's defense costs (including those paid on behalf of the individual insureds) incurred in connection with the proceedings described herein. Ocean Beauty's extracontractual claims and the amount of its damages will be addressed in further proceedings.

## II.     STATEMENT OF FACTS

### A.     Ocean Beauty and the National Union Policy

Ocean Beauty, founded in 1910 as Washington Fish & Oyster, is a Seattle-based pioneer in the Northwest and Alaska seafood industry. It is a vertically integrated seafood producer, and maintains company-owned processing, distribution, and sales outlets in Alaska and throughout the United States and Japan. Ocean Beauty's products include canned, smoked, and wild salmon. Ross Decl. ¶ 2.

Ocean Beauty purchased the Policy, bearing number 552-32-70, from National Union. The Policy was in force from January 10, 2008 to January 10, 2009, and provided liability coverage subject to a limit of $10 million. *Id.*, Ex. A. Ocean Beauty is a subsidiary of named insured Ocean Beauty Holdings, Inc. and a named insured by endorsement. *Id.* at 1, End. 12.

#### 1.     Basic Terms and Coverage Grant

The DOJ proceeding implicates two of the Policy's coverages: (1) the entity coverage, designated coverage B(i) under the Policy, which covers third-party claims asserted against Ocean Beauty itself; and (2) coverage B(ii), which covers Ocean Beauty for costs it incurs in

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 2
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

indemnifying individual employees against liability claims they incur in the course of their work on behalf of the company.  The insuring agreement that grants both of those coverages provides in relevant part as follows:

> This policy shall lay the Loss of the Company arising from a:
>
> (i)      Claim first made against the Company, or
>
> (ii)     Claim first made against an Individual Insured
>
> . . . for any actual or alleged Wrongful Act, but in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company . . . .

*Id.* at 1, § 1.B.

The Policy defines "Claim," in relevant part, as:

> (1)      a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or
>
> (2)      a civil, criminal, administrative, regulatory, or arbitration proceeding for monetary or non-monetary relief which is commenced by:
>
>> (i)      service of a complaint or similar pleading; or
>>
>> (ii)     return of an indictment (in the case of a criminal proceeding); or
>>
>> (iii)    receipt or filing of a notice of charges . . . .

*Id.* at 2, § 2(b).

## 2.    Duty to Defend

The Policy imposes a duty to defend on National Union.  Clause 8 of the Policy provides:

> [T]he Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 3
No. 2:12-cv-01331-RSL

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

> the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy.  This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured . . . .  Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false, or fraudulent . . . .

*Id.* at 11, § 8.

Where the Insured does not elect to tender the defense of a Claim, National Union must still advance defense costs, *i.e.*, pay them as they are incurred during the defense of the underlying claim, at the written request of the Insured.  *Id.* at 12.

**B.      The Federal Grand Jury Proceeding**

**1.      The December 2008 Search Warrants and Document Subpoena**

On December 9, 2008, agents from the Federal Bureau of Investigation, Food and Drug Administration, and Immigration and Customs Enforcement executed search warrants on three Ocean Beauty facilities:  corporate headquarters in Seattle, a salmon smoking facility in Monroe, Washington, and a salmon smoking facility in Los Angeles.  Ross Decl., Exs. B–D.  The search warrants authorized the seizure of documents "constituting evidence, instrumentalities, or fruits" of Ocean Beauty's alleged introduction of contaminated seafood into interstate commerce in violation of "Title 18, United States Code, Section 1001 and Title 21, United States Code, Sections 331(a) and (c) and 333(a)(2) . . . ."  *Id.* at Attachment B.

This was not a dispassionate, written request for information; the government did not send a letter and politely await Ocean Beauty's response.  Nor was there ever any pretense that Ocean Beauty was a mere third-party witness.  To the contrary, approximately 80 armed federal agents coordinated a surprise search at three facilities in two states.  Ross Decl. ¶ 3; *see also* Declaration of Diane Miller in Support of Plaintiff's Motion for Partial Summary Judgment

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 4
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

("Miller Decl.") ¶ 5 (approximately 20 agents searched the Monroe facility).  Employees were

detained for questioning, including Diane Miller, plant manager in Monroe.  *Id.* ¶ 1.  Ms. Miller

was held in the employee lunch room for questioning, and was accused of processing

contaminated fish, accused of lying about it to FDA inspectors, and threatened with jail time.

Federal agents also told Ms. Miller that other Ocean Beauty employees would be "looking at 20

years" in prison.  *Id.* ¶ 4.  The agents remained at the Monroe facility for over 12 hours—until

after 9:00 p.m.  As a result, production activities were halted for much of the day.  *Id.* ¶ 5.

      The same day, federal agents served a grand jury subpoena on Ocean Beauty, demanding

similar materials to those identified in the search warrants.  Ross Decl., Ex. E.  The subpoena

was accompanied by correspondence specifying that it was served pursuant to "an official Grand

Jury investigation of suspected violations of the Federal criminal laws . . . ."  *Id.*

      **2.**     **The 2009 Target Letter and Grand Jury Subpoenas to Individual Insureds**

      In early 2009, Assistant United States Attorney Patricia C. Lally caused subpoenas to be

served on Ocean Beauty employees Charles Jensen, Gary Osburn, David Forbush, Don Rader,

Ron Christiansen, Kimbeau Try, and Diane Miller.  *See* Declaration of Jeffrey Coopersmith in

Support of Plaintiff's Motion for Partial Summary Judgment ("Coopersmith Decl."), Ex. C; Ross

Decl. ¶ 5.  All were Ocean Beauty employees to whom Ocean Beauty owed an indemnification

obligation.  Ross Decl. ¶ 5; *id.*, Ex. A, at 1 § 2.B(ii).

      By letter to Ocean Beauty's counsel dated January 13, 2009, Ms. Lally confirmed that

employees Jensen, Osburn, Forbush, Rader, Christianson, Try, and Miller were "targets" of a

federal criminal investigation.  Coopersmith Decl., Ex. F.  Ms. Lally also maintained throughout

the proceeding that the company itself was a target.  Coopersmith Decl. ¶ 4.  In the criminal

context, "target" has a specific meaning.  According to the United States Attorneys' Manual at

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 5
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

§ 9-11.151, "a 'target' is a person as to whom the prosecutor or the grand jury has substantial

evidence linking him or her to the commission of a crime and who, in the judgment of the

prosecutor, is a putative defendant."  A "target" is distinguishable from the less-serious "subject"

of an investigation.  U.S. Dep't of Justice, U.S. Attorneys' Manual § 9-11.151 (1997).

### 3.  The August 2011 Plea Demands

In August 2011, the DOJ began issuing plea demands to certain of the individual

insureds.  The demands, made to Mr. Rader, Ms. Miller, Mr. Try, and Jim Yonker, sought guilty

pleas to misdemeanor strict-liability violations of the Food, Drug & Cosmetics Act, 21 U.S.C.

§§ 331(a) and 333(a)(1).  Coopersmith Decl., Exs. H, I.  Under the proposed plea agreements,

each individual would have faced statutory penalties, including imprisonment for up to one year,

a fine of up to $1,000, and a period of supervision following release from prison of up to one

year, among other penalties.  *Id.* at 1, 2.

### 4.  The Insured Parties' Defense Effort

Promptly upon receipt of the December 2008 grand jury subpoena and search warrants,

Ocean Beauty retained Jeffrey Coopersmith of the Seattle office of DLA Piper as lead defense

counsel.  Ross Decl. ¶ 7; Coopersmith Decl. ¶ 1.  Between December 2008 and March 2012,

Ocean Beauty, with DLA Piper's assistance, vigorously defended against the government's

allegations.  This effort included an extensive internal investigation of the allegations,

responding to the government's requests for information and testimony, and refuting the

government's factual allegations and legal theories.  Coopersmith Decl. ¶ 8.  In March 2012,

Ocean Beauty retained new defense counsel, Calfo Harrigan Leyh & Eakes, LLP.  Ross Decl.

¶ 7.  Calfo Harrigan continued the defense effort, as well as negotiations with the government

toward a resolution of its claims.  *Id.*

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 6
No. 2:12-cv-01331-RSL

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Soon after they were served with grand jury subpoenas in early 2009, each of the individual insureds also retained (separate) counsel.  The individuals worked with their counsel throughout 2009–2012 to defend against the government's claims and, ultimately, negotiate a resolution.  Pursuant to its indemnification obligation, Ocean Beauty paid the defense costs incurred by the individual insureds.  *Id.* ¶ 6.

### 5.      The Written Settlement Demands

On February 27, 2012, the DOJ confirmed via e-mail that it was seeking a global settlement agreement with Ocean Beauty and the individual insureds.  Declaration of Franklin D. Cordell in Support of Plaintiff's Motion for Partial Summary Judgment ("Cordell Decl."), Ex. A, at Tab I.  On April 24, 2012, the DOJ set out the terms of that demand in detail, including the requirement of a civil damages payment of $1 million on the part of Ocean Beauty, as well as misdemeanor guilty pleas by certain of the individual insureds.  Declaration of Angelo Calfo in Support of Plaintiff's Motion for Partial Summary Judgment ("Calfo Decl."), Ex. A.

### 6.      The Settlement with the U.S. Government

In January 2013, Ocean Beauty and the individuals reached a settlement with the government.  Under its terms, one of the target individuals pleaded guilty to strict liability misdemeanor violations of the Food, Drug & Cosmetics Act, 21 U.S.C. §§ 331(a) and 333(a)(1).  Ocean Beauty agreed to make a payment of $250,000 in a civil settlement of the claims against it.  Ross Decl. ¶ 8.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 7
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

**C.      Ocean Beauty's Tender of the Underlying Claim and National Union's Belated Acceptance.**

      **1.      Ocean Beauty Tendered Defense of the Search Warrants and Subpoenas, and National Union Refused to Defend.**

By letter dated December 30, 2008, Ocean Beauty notified National Union of the grand jury subpoena served on and search warrants executed against it.  Coopersmith Decl., Ex. A. The letter specified the notice was a notice of *claims*, in addition to "circumstances that may reasonably be expected to give rise to a claim," and outlined the work Ocean Beauty's counsel, DLA Piper, was performing to defend against the investigation.  *Id.* at 1, 2.  National Union acknowledged receipt of the tender on January 7, 2009.  Coopersmith Decl., Ex. B.

On February 24, 2009, Ocean Beauty informed National Union that certain Ocean Beauty employees had been served with grand jury subpoenas.  Coopersmith Decl., Ex. D.  That communication explained that these employees had retained counsel, and that Ocean Beauty was advancing expenses.  It also explicitly requested a coverage determination from National Union. *Id.*  In response, claims adjuster Dennis Van Dina stated he was "reviewing the file" and would "soon issue our coverage opinion."  Coopersmith Decl., Ex. E.  There were, however, no questions or follow-up on the part of National Union into the nature or extent of the government proceedings.  Neither does National Union's claim file reflect any consultation with coverage counsel.  *See* Cordell Decl., Ex. C.  On March 26, 2009, National Union denied coverage on the basis that the search warrants and subpoenas did not constitute a "Claim" under the Policy. Coopersmith Decl., Ex. G.

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

2.      **Ocean Beauty Tendered the September 2011 Plea Demands, and National Union Again Refused to Defend.**

On August 17, 2011, Ocean Beauty's counsel informed National Union that the U.S. Attorney's Office had issued plea demands to Ocean Beauty employees Rader, Yonker, Miller, and Try.  Coopersmith Decl., Ex. J.  Ocean Beauty attached the draft plea agreements and specified that the government was seeking guilty pleas to misdemeanor violations of the Food, Drug and Cosmetic Act.  *Id.*  Nearly four months later, on December 12, 2011, National Union advised that it would continue to deny Ocean Beauty a defense on the basis that no "Claim" had arisen under the Policy.  Coopersmith Decl., Ex. K.

3.      **Ocean Beauty Tendered the February 27, 2012 Settlement Demand, and National Union Did Not Defend.**

Ocean Beauty, through its counsel, tendered the government's February 27, 2012 written confirmation that it was seeking a global settlement to National Union.  Cordell Decl., Ex. A, at Tab I.  National Union did not agree to defend.

4.      **Ocean Beauty Tendered the April 2012 Written Settlement Demand—and National Union *Accepted* the Tender.**

Ocean Beauty tendered the Department of Justice's April 24, 2012 settlement demand letter to National Union on the day it was received.  Cordell Decl., Ex. B.  On May 23, 2012, National Union—now represented by counsel—accepted the defense of the claims.  Cordell Decl., Ex. D.  National Union determined that the April 24 letter constituted a "Claim" under the Policy because it demanded "plea agreements by the three individual defendants" and a $1 million payment from Ocean Beauty.  *Id.*  National Union refused, however, and continues to refuse, to pay Ocean Beauty's and the individual insureds' defense costs incurred from

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

December 2008, the time of the search warrants and subpoenas, to April 24, 2012, the date of the

government's written settlement demand.

### III.    ARGUMENT AND AUTHORITIES

**A.    Ocean Beauty Was Entitled to a Defense Because "Claim" Can Reasonably Be Interpreted to Include the Subpoenas, Search Warrants, Target Letter, and Plea Demands.**

This motion is governed by an aspect of Washington insurance law that is particularly

well developed and on which the appellate courts have definitively and repeatedly ruled in recent

years:  the trigger and scope of the liability insurer's duty to defend.  Three recent decisions of

the Washington Supreme Court—*Woo*,[2] *American Best Food*,[3] and *Immunex*[4]—have forcefully

confirmed that the duty to defend in Washington is extraordinarily robust:  it is easy to trigger,

difficult to terminate, and all uncertainty, legal and factual, must be resolved in favor of

providing the policyholder with a defense.

The Washington courts had long held that the duty to defend was broader than and

independent of the duty to indemnify.  But *Woo* and *American Best Food* added two corollary

rules that, had National Union followed them, would have compelled a defense in this case as of

December 2008.  The first is the "conceivably covered" standard.  While the duty to indemnify

arises only if the insured's liability is ultimately determined to satisfy the terms of the policy,

"the duty to defend is triggered if the insurance policy *conceivably covers* allegations in the

complaint."  *Am. Best Food*, 168 Wn.2d at 404 (citing *Woo*, 161 Wn.2d at 53).

The second corollary is that all legal and factual uncertainty must be resolved in favor of

providing the policyholder with a defense.  When the facts or law pertinent to coverage are

---

[2] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43 (2007).
[3] *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398 (2010).
[4] *Nat'l Surety Corp. v. Immunex Corp.* 297 P.3d 688, --Wn.2d-- (2013).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 10
No. 2:12-cv-01331-RSL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

susceptible to multiple interpretations, the insurer must defend as long as there is "*any reasonable interpretation . . . that could result in coverage . . . .*" *Id.* (emphasis added); *see also Woo*, 161 Wn.2d at 60 (holding insurer may not rely on its own interpretation of case law to determine there is no coverage, rather, "the duty to defend requires an insurer to give the insured the benefit of the doubt . . . .").  In determining whether an insured's interpretation of the policy is reasonable, it is not only appropriate for, but incumbent upon, the insurer (and the Court) to look to out-of-state authority if Washington courts have not addressed the precise situation at hand.  *Am. Best Food*, 168 Wn.2d at 408; *see also Woo*, 161 Wn.2d at 60 (insurer could not rely on attorney's opinion that duty to defend was not triggered where attorney acknowledged he relied on cases that were not directly on point and a Washington court could decide they did not apply).  Where non-Washington authority supports the insured's interpretation and the Washington courts have not spoken, the insurer is compelled to defend until that legal uncertainty is resolved.  *Am. Best Food*, 168 Wn.2d at 408 ("The lack of any Washington case directly on point and a recognized distinction between pre-assault and post-assault negligence in other states presented a legal uncertainty . . .  Because any uncertainty works in favor of providing a defense to an insured, Alea's duty to defend arose when Dorsey brought suit . . . .").

The Washington Supreme Court recently reaffirmed the broad nature of the duty to defend in *Nat'l Surety v. Immunex*.  *Immunex* reinforced the rule that an insurer must resolve any doubt in favor of defending its insured.  297 P.3d at 691.  Further, the court held that defense costs paid where the duty to defend is in doubt may not be recouped by an insurer when it is later determined the defense obligation was not triggered.  *Id.* at 693–94.  To hold otherwise, the court reasoned, would render the defense obligation illusory.  *Id.*

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

The teaching of Washington law governing the duty to defend is clear, and becomes unmistakable after *Woo*, *American Best Food*, and *Immunex*: ***When in doubt—meaning when there is any conceivable legal or factual outcome under which the policy terms might be satisfied—defend your insured***.

**B.      National Union's Duty to Defend Was Triggered in December 2008.**

**1.      The Subpoenas, Search Warrants, and Target Letter Fell Within the Plain Meaning of the Policy's Definition of "Claim."**

National Union utterly failed to apply Washington duty-to-defend law when the insurer received Ocean Beauty's tender of the search warrants, subpoenas, and target letter in late 2008 and early 2009.  All of those events are covered "Claims" under the Policy because they constitute "written demand[s] for . . . non-monetary relief."  Ross Decl., Ex. A, at 2, § 2(b). First, as a matter of plain meaning, the actions sought by the search warrants and subpoenas constitute "relief" under the Policy.  The Policy does not define "relief."  In Washington, courts construe insurance policies as a whole, and give them "a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575 (1998).  In that spirit, undefined terms are to be given their plain, ordinary, and popular meanings.  *Boeing Co. v. Aetna Cas. & Surety Co.*, 113 Wn.2d 869, 877 (1990).  Where a term is susceptible to both an ordinary meaning and a lawyerly, technical one, the ordinary meaning controls.  *Id.* at 882.  Similarly, when the meaning of a term is not plain, and more than one reasonable interpretation may apply, the term is ambiguous and must be construed in the insured's favor.  *Kitsap County*, 136 Wn.2d at 576.

Here, the subpoenas and search warrants compelled Ocean Beauty, via legal process, to turn over documents and information involuntarily to the United States.  If Ocean Beauty had

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 12
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

failed to comply, the government could have sought enforcement in the federal courts—with the "relief" available at such enforcement proceedings the same relief that is demanded by the documents themselves:  the turning over of documents, computers, and other information. Ocean Beauty's compliance with the government's demands for information, then, plainly is "relief" within the meaning of the Policy.

A reasonable purchaser of insurance would not read the provision any other way.  The definition of Claim expressly includes "a written demand for non-monetary relief (*including any request to toll or waive any statute of limitations*) . . . ."  Ross Decl., Ex. A, at 2, § 2(b)(1) (emphasis added).  If a request to toll or waive a statute of limitations is "relief" within the meaning of the Policy, so must be "requests" for cooperation with a grand jury investigation made to the targets of such investigation at the point of a legal bayonet.  If National Union wanted some other, more narrow or technical definition to apply, it could have made that clear in the Policy—a "demand for money damages" or an express exception for "investigative demands seeking only documents and information where the Insured is not a target of the investigation." National Union did not do so, and the Court should decline to import one.  *See Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 67 (1994) ("[I]f the insurers wanted an objective standard to apply, they could easily have drafted language to that effect.").  The Court should construe "relief" to include the actions sought by the subpoenas and search warrants, and find that they constitute a "Claim."

### 2. The Case Law Confirms that Subpoenas and Search Warrants Are "Claims" Under D&O Policies.

No Washington decision addresses whether subpoenas initiating government investigations constitute "Claims" under a D&O policy.  Federal courts in other jurisdictions,

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 13
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

however, have considered the question, and a majority hold such subpoenas are covered demands for relief. *Agilis Benefit Servs., LLC v. Travelers Cas. & Surety Co. of Am.*, No. 5:08-CV-213, 2010 WL 8573372, at *7 (E.D. Tex. Apr. 30, 2010) (citing cases). The on-point decisions disclosed by Ocean Beauty's research are as follows.

### a.   *Polychron v. Crum & Forster Ins. Cos*.

In *Polychron v. Crum & Forster Ins. Cos.*, Chris Polychron was served with a grand jury subpoena seeking records of the Grand National Bank from the period when he served as its president. 916 F.2d 461, 462 (8th Cir. 1990). Later, an Assistant U.S. Attorney and two IRS agents questioned him concerning the documents that had been the subject of the subpoena. *Id.* Mr. Polychron tendered his defense of the investigation to the bank's D&O insurer, Crum & Forster, which refused to defend on the basis that no "claim" had arisen under the policy. *Id.*

The term "claim" was undefined in the Crum & Forster policy, but the court found the plain meaning of the word required a "demand." *Id.* at 463. Over the insurer's objection, the court held the subpoena initiating the investigation of Mr. Polychron constituted a "demand," and therefore a "claim" because it required action on the part of Mr. Polychron. *Id.* In so holding, the court distinguished between a grand jury investigation and a "mere request[] for information," finding the subpoena directed at Mr. Polychron initiated a "serious" probe and "amounted as a practical matter, to an allegation of wrongdoing against Mr. Polychron, for which he prudently hired an attorney." *Id.* Mr. Polychron's defense costs, then, were covered.

### b.   *Gold Tip, LLC v. Carolina Cas. Ins. Co.*

*Gold Tip, LLC v. Carolina Casualty Ins. Co.* arose out of the Utah County Attorney's Office's "informal" investigation of a company's CEO. No. 2:11-CV-00765, 2012 WL 3638538, at * 2 (D. Utah Aug. 23, 2012). Gold Tip and the CEO received phone calls and letters

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

from the County Attorney, seeking document productions and meetings with the CEO and another employee.  *Id.* at *4.  They tendered the defense of the investigation to Carolina Casualty, which denied a defense, arguing the investigation did not constitute a "written demand for monetary or non-monetary relief" within the policy's definition of "claim."  *Id.*  The court disagreed and held that the letters and requests for information ***did*** plausibly constitute "written demands for nonmonetary relief" because the company and the CEO were compelled to cooperate under threat of legal process.  *Id.* ("Gold Tip reasonably believed that if it refused to cooperate, the Utah County Attorney's Office would be more inclined to criminally indict . . . .").

### c.    *Agilis Benefit Servs., LLC v. Travelers Cas. & Surety Co. of Am*.

In *Agilis Benefit Services*, the court considered whether a federal grand jury subpoena served on a company and three of its officers as part of an IRS investigation of alleged tax evasion constituted a "written demand for non-monetary relief" under a D&O policy.  2010 WL 8573372, at *2.  The court held that the subpoena did qualify as a claim under this prong of the policy's definition, reasoning that the meaning of "relief" is "broad enough to include a demand for something due, including a demand to produce documents or appear before a grand jury."  *Id.* at *6.  In so holding, the court found the insurance company could have defined the term "relief" in the policy, but having not done so, could not rely on an inconclusive legal definition of the term to deny a defense.  *Id.*

### d.    *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*

The court in *Minuteman Int'l, Inc. v. Great Am. Ins. Co*. held an SEC subpoena directed at Minuteman and its directors and officers was a "written demand for non-monetary relief," and therefore a covered "claim."  No. 03 C 6067, 2004 WL 603482, at *7 (N.D. Ill. Mar. 22, 2004).  The court held the subpoena demanded "relief" in the form of appearances for depositions and

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 15
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

the production of documents, and reasoned that "the SEC could have brought suit in court to require compliance with the subpoena." *Id.* The court, like that in *Polychron*, noted that a government subpoena is not a "mere request for information, but a substantial demand for compliance by a federal agency with the ability to enforce its demand." *Id.* As a result, Minuteman was entitled to a defense under the policy. *Id.*

        **e.**       ***Richardson Elecs., Ltd. v. Fed. Ins. Co.***

     *Richardson Electronics, Ltd. v. Federal Ins. Co.* held that subpoenas issued as part of a DOJ antitrust investigation constituted claims. 120 F. Supp. 2d 698, 701 (N.D. Ill. 2000). Because "the Justice investigation required Richardson and its officers and directors to comply with various demands for testimony and production of documents," there was a "demand for something due" within the meaning of the term "claim." *Id.* Again, the court underscored the seriousness of a DOJ investigation as compared to routine requests for information. *Id.*

     Like the courts in *Polychron*, *Gold Tip*, *Agilis*, *Minuteman*, and *Richardson*, this Court should find the subpoenas and search warrants at issue here constitute written demands for non-monetary relief within the meaning of "Claim" under the Policy. As in those cases, the government in this case demanded, via subpoenas and search warrants, relief in the form of documents and testimony from Ocean Beauty and the Individual Insureds. Ross Decl., Exs. B–E. And as in those cases, Ocean Beauty and the individual insureds were obliged to respond to the demands at penalty of legal process. *See id.* The subpoenas and search warrants here qualify as "written demands for non-monetary relief," and as such are covered Claims against which Ocean Beauty is entitled a defense.

     National Union will argue that this Court should follow the few federal district court cases that hold a subpoena does not constitute a "Claim" under a D&O policy. In *Center for*

*Blood Research, Inc. v. Coregis Ins. Co.*, the court held a government investigative subpoena was not a demand for "relief" because the word, defined in the context of other terms in the policy requiring a "binding adjudication" of liability, required a demand for "court-ordered benefit." 2001 WL 34088617, at *2 (D. Mass. Nov. 14, 2001). There is no requirement of a binding adjudication in the Policy's definition of "Claim" here.

Similarly, in *Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, the court held that grand jury subpoenas and search warrants incident to a government investigation of Diamond Glass's business practices did not qualify as a "written demand for . . . nonmonetary relief." No. 06-CV-13105, 2008 WL 4613170, at *4 (S.D.N.Y. Aug. 18, 2008). Relying on *Center for Blood Research*, the court found "relief," read in the context of the particular policy at issue, meant the "redress or benefit . . . that a party asks of a court." *Id.* In adopting *Center for Blood Research*'s definition of "relief," the *Diamond Glass* court failed to acknowledge its ties to the policy's requirement that there be a "binding adjudication" of liability for a loss to be covered. By contrast, here, the National Union Policy expressly states that "written demand . . . for non-monetary relief" includes a request to toll or waive a statute of limitations. Ross Decl., Ex. A, at 2, § 2(b)(1). Such a request plainly does not seek "redress or benefit" from a court. Moreover, even under *Diamond Glass*'s reading, investigative subpoenas and search warrants of the type at issue here *do* seek "relief" from a court—in the form of compelled production of information. A Washington court would decline to apply *Diamond Glass*'s anomalous analysis to our facts.

Also distinguishable is the Southern District of Florida's 2010 decision in *Office Depot, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 734 F. Supp. 2d 1304 (S.D. Fla. 2010).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 17
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

There, the court held Office Depot could not recover its costs incurred in responding to an SEC investigation because the investigation was not a covered "administrative or regulatory proceeding" within the definition of "Claim." *Office Depot*, 734 F. Supp. 2d at 1316–17.  In *Office Depot*, however, the policy's definition of "Claim" expressly excepted "administrative or regulatory . . . *investigation[s]* of an Organization . . . ." from coverage.  *Id.* (emphasis added). Thus the court held the parties could not have intended to include government "investigations" within the covered government "proceedings." *Id.* at 1317.  Here, the Policy's definition of claim contains no such carve out for investigations.

Ultimately, however, under Washington's duty-to-defend law, Ocean Beauty does not need to prevail on this case law debate.  Even if the Court were to credit the analyses in *Center for Blood Research*, *Diamond Glass*, and/or *Office Depot*, these cases, read together with *Polychron*, *Gold Tip*, *Agilis*, *Minuteman*, and *Richardson* in the absence of controlling Washington law, create at minimum ***a legal uncertainty*** that National Union was required to resolve in favor of defense.  In *Woo*, the insurer obtained a coverage analysis from outside counsel, and the court still found a breach of the duty to defend.  161 Wn.2d at 60.  Here, National Union did not even go that far.  In fact, as noted above, National Union neither followed up to learn the full extent and nature of the claims nor sought advice from coverage counsel.  *See* Cordell Decl., Ex. C.

Like the courts in *American Best Food* and *Woo*, this Court should hold National Union's duty to defend was triggered when the search warrants were executed and the subpoenas were served.  To do otherwise would be to allow the insurer to give itself, not its insured, the benefit of the doubt, contrary to Washington law.  *Woo*, 161 Wn.2d at 60.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 18
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

**C.     The August 2011 Plea Demands and February 27, 2012 Settlement Demand Are Claims Under the Policy, and Are Indistinguishable from the April 2012 Communication that National Union Accepted as a Claim.**

Ocean Beauty respectfully submits that the Court should have no difficulty ruling that that the December 2008/early 2009 search warrants and subpoenas constitute a "Claim" under the Policy.  Were it not to do so, however, it should at minimum find the August 2011 plea demands to the individual insureds triggered National Union's defense obligation.  Because they demand "court-ordered" redress in the form of guilty pleas to misdemeanor violations of criminal laws punishable by prison time and monetary restitution, the plea demands qualify as "demand[s] for . . . relief" even under the reasoning set out in *Center for Blood Research*, *Diamond Glass*, and *Office Depot*.  Indeed, the 2011 plea demands are substantively no different than the April 24 communication from Justice confirming a global plea demand—the communication National Union does concede constitutes a "Claim" under the Policy.

Even less distinguishable from the April 24 letter is Assistant U.S. Attorney Westinghouse's February 27, 2012 written confirmation that Justice was seeking a global settlement.  *See* Cordell Decl., Ex. A.  Even under National Union's reading of the Policy's definition of "Claim," the duty to defend was triggered at the very least as of this date.

**D.     National Union Is Liable for Ocean Beauty's Defense Costs from December 2008 Through the Date of the Court's Ruling on this Motion—the Period of Legal Uncertainty—Regardless of the Court's Ultimate Coverage Decision.**

Once the duty to defend is triggered in Washington, the insurer must continue to defend "until it is clear that the claim is not covered." *Am. Best Food*, 168 Wn.2d at 405.  In the face of factual or legal uncertainty concerning whether the duty to defend attaches, an insurer may not "'desert [its] policyholder[] and allow [it] to incur substantial legal costs while waiting for an indemnity determination.'" *Id.* (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

751, 761 (2002)).  Instead, the proper avenue is for the insurer to defend under a reservation of rights and seek a declaratory judgment as to coverage.  *Id.*

Here, the period of factual and legal uncertainty began in December 2008 when the first subpoena was served, and will not end until this Court makes a definitive ruling concerning the definition of "Claim."  National Union, then, is liable for all of Ocean Beauty's defense costs incurred during this time, regardless of the Court's ultimate coverage determination.  *See id.*

**E.**     **National Union's Notice-Based Defense Fails.**

      **1.**     **The Issue—National Union Claims Ocean Beauty Did Not Use the "Magic Word."**

National Union has argued—not during its actual handling of this claim, but only later, in this litigation—that Ocean Beauty did not adequately request coverage from National Union at the time of the December 2008 search warrants and subpoenas.  The insurer's argument is based on the fact that pursuant to Clause 8 of the Policy, its duty to defend, as opposed to the duty to advance defense costs, is triggered only by the insured's written "tender" of the claim within 30 days of the date the claim is first made against the insured.  *See* Ross Decl., Ex. A at 11, § 8. Although National Union cannot deny that Ocean Beauty provided written notice of the subpoenas and search warrants on December 30, 2008—within 30 days of the government's search—it argues such notice did not trigger its duty to defend under Clause 8 because Ocean Beauty did not use the word "tender" or otherwise expressly demand a defense.  This argument fails for three independently sufficient reasons.

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

2.     **There Is No Material Difference Between a Duty to Defend and a Duty to Advance Defense Costs:  The Standard Is the Same and National Union Was Obligated to Do One or the Other.**

Most importantly, National Union's argument that its duty to defend was never triggered ultimately raises a distinction without a difference.  The Policy is clear that even where there is no duty to "defend," National Union still owes a duty to advance defense costs.  *Id.* at 12.  Under the Policy, the duty to defend and the duty to advance defense costs differ in only two ways:  (1) if the insured elects to proceed under the duty to advance, the insured retains greater control over the defense and choice of counsel; and (2) under the duty to advance, the insurer may be able to recoup defense costs paid if it is ultimately determined there is no indemnity coverage.  *See id.* at 11-12, § 8.  Neither of these differences is material to the issue at hand:  the ***start*** of the insurer's obligation to pay.

The courts have acknowledged that, for purposes of determining when an insurer must begin paying defense costs, the duty to advance such costs is treated no differently than the duty to defend.  *See Liberty Mut. Ins. Co. v. Pella Corp.,* 650 F.3d 1161, 1170 (8th Cir. 2011) ("[O]ther states' courts generally have viewed an insurer's duty to advance defense costs as an obligation congruent to the insurer's duty to defend . . . .  Therefore, even though this case does not involve a duty to defend, the parameters of that duty . . . guide our analysis of Liberty Mutual's duty to reimburse Pella's defense costs .").  Thus, National Union's duty to advance defense costs is triggered by the same "conceivably covered" standard set forth in *Woo* and

*American Best Food*, and subject to the same rule requiring resolution of factual or legal uncertainly in the insured's favor.  *See id.* (applying Iowa's "potentially covered" rule).[5]

### 3. Ocean Beauty Unmistakably Sought Coverage—Which Necessarily Included a Defense—and National Union Treated the Claim Accordingly.

Ocean Beauty's December 30, 2008 letter plainly constitutes tender of a defense—the letter specifically states it is a "notice of *claims* and circumstances" (that is, not simply a notice of circumstances that might lead to future claims), attaches the search warrants and subpoenas, and advises National Union that the company was investigating and preparing to respond to the alleged violations of state and federal law.  Coopersmith Decl., Ex. A (emphasis added).  This is particularly true when the letter is read in light of counsel's February 2009 follow-up e-mail, notifying National Union that certain Ocean Beauty employees had been served with grand jury subpoenas, and expressly requesting a coverage decision:

> . . . The company is advancing expenses to both employees, and there are undertakings.

> Please confirm that you received this email and let me know if you have questions at this point that will be necessary to make a coverage determination on these matters.

Coopersmith Decl., Ex. D.

Not surprisingly, then, National Union treated Ocean Beauty's communications as tender. In response to counsel's February 2009 e-mail, claims adjuster Dennis Van Dina responded: "Grand jury subpoenas do not trigger coverage under the policy; an indictment is required. However, I am reviewing the file and will soon issue our coverage opinion."  Coopersmith Decl., Ex. E.  And on March 26, 2009, National Union denied coverage.  Coopersmith Decl., Ex. G.

---

[5] Moreover, at bottom, for the reasons set forth in Parts III.B, C, *supra*, and the cases cited therein, the search warrants, subpoenas, and plea demands all satisfy the Policy's definition of "Claim," under any conceivable standard.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 22
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

National Union would have had no reason to issue that denial if it did not understand Ocean

Beauty to be requesting a defense.

> **4.    "Tender" Would Have Been Futile, and National Union Cannot Prove Prejudice Resulting from Any Failure to Clearly Tender.**

Even if National Union could establish that the December 2008 tender was insufficiently

specific, it would be relieved of its duty to defend (but not its functionally identical duty to

advance defense costs) only if it could prove it suffered actual and substantial prejudice as a

result of a failure by Ocean Beauty to use the magic word "tender" within the prescribed 30-day

period. *Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*, 83 Wn. App. 432, 437 (1996)

(citations omitted); *see also Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 141 (2001) ("Even if

Allstate's policy required tender as a condition precedent to the duty to defend (which it does

not), a showing of actual and substantial prejudice is required before an insured's breach will

release an insurer from its duty under the policy—including the duty to defend.").

National Union has no colorable prejudice argument—it cannot be overemphasized that

National Union ***flatly denied coverage*** on the basis that no "Claim" had been raised at all.  Had

Ocean Beauty used the "magic words" that National Union apparently now contends are

necessary, that effort would have been futile given the inevitable denial of coverage.  *See Puget*

*Sound Serv. Corp. v. Bush*, 45 Wn. App. 312, 318 (1986) ("[T]he law does not require tender of

a useless performance.").  No amount of specificity in Ocean Beauty's request for a defense

would have changed National Union's position on that issue.

Further, the regulations promulgated by the Washington Insurance Commissioner prevent

National Union from engaging in this type of semantic game with its insured.  Washington's

Unfair Claims Handling Regulations provide as follows:

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 23
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims: . . .

(13)  Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

WAC 284-30-330(13).

National Union apparently now argues that Ocean Beauty's inartful language when it tendered the claim in December 2008 was a ground for the insurer's denial of coverage and affects its current claim for reimbursement of its defense costs.  However, National Union failed to inform Ocean Beauty of the Policy's distinction between the duty to defend and the duty to advance defense costs, and the insurer certainly never hinted that Ocean Beauty's failure to "tender" the claim was a factor in the denial.  That type of caginess is precisely what the above-quoted regulation prohibits, and the Court should not permit National Union to raise this argument, in violation of the regulation, at this time.[6]

### IV.   CONCLUSION

For the foregoing reasons, Ocean Beauty respectfully requests that this Court grant its motion for partial summary judgment and enter an order declaring that Ocean Beauty is entitled to payment of its reasonable and necessary defense costs incurred in defending against the Department of Justice proceedings described herein.  A proposed order is submitted herewith.

---

[6] In contrast, and in recognition of the principle behind the cited regulation, National Union's outside counsel asked for clarification as to whether Ocean Beauty's April 2012 tender of the written demand from AUSA Westinghouse was intended to be a tender triggering the duty to defend or a request for advancement of defense costs.  *See* Cordell Decl., Ex. C, at 1.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 24
No. 2:12-cv-01331-RSL

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

DATED this 16th day of May, 2013.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Plaintiff Ocean Beauty Seafoods, LLC


By    s/*Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392
Haley K. Krug, WSBA #39315
1001 Fourth Avenue, Suite 4000
Seattle, Washington 98154
Telephone:  (206) 467-6477
Facsimile:   (206) 467-6292
Email:  fcordell@gordontilden.com
Email:  hkrug@gordontilden.com

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  DUTY TO DEFEND - 25
No. 2:12-cv-01331-RSL

**GORDON TILDEN THOMAS & CORDELL** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following.

Counsel for Defendant National Union Fire
Insurance Company of Pittsburgh, PA

Curt H. Feig
Ruby S. Redshaw
Nicoll Black & Feig PLLC
1325 Fourth Avenue, Suite 1650
Seattle, WA 98101
T:  206-838-7555
F:  206-838-7515
Email:      cfeig@nicollblack.com
               rredshaw@nicollblack.com


DATED this 16th day of May, 2013.


                              *s/Franklin D. Cordell*
                              Franklin D. Cordell, WSBA #26392

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292